**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**DYER INVESTMENT COMPANY, LLC,
and DYER AQUA, LLC,**

            **Plaintiffs,**

**v.**                                     **No. 05-2812-D-P**

**MARSH & MCLENNAN COMPANIES, INC.;
MARSH, INC.; MARSH USA INC.;
SEABURY & SMITH, INC. d/b/a MARSH
ADVANTAGE AMERICA and CERTAIN
UNDERWRITERS AT LLOYD'S LONDON,**

            **Defendants.**

---

**MARSH DEFENDANTS' TRIAL MEMORANDUM**

---

Defendants, Marsh & McLennan Companies, Inc. ("MMC"), Marsh, Inc. ("Marsh"), Marsh USA Inc. ("Marsh USA"), and Seabury & Smith, Inc. d/b/a Marsh Advantage America ("Seabury") (collectively the "Marsh Defendants") submit this trial memorandum of law.

## I.    INTRODUCTION

Marsh Defendant Seabury, through broker Brant Horne, acted as Plaintiffs' insurance broker and obtained for Plaintiffs insurance policies covering Plaintiffs' real and personal property. Plaintiffs allege that the Marsh Defendants did not obtain proper coverage for them and that they incurred losses because property damaged by two hurricanes in September of 2004 was not adequately covered by insurance. In their Amended Complaint, Plaintiffs assert claims against the Marsh Defendants for i) breach of contract; ii) breach of the implied covenant of good faith and fair dealing; iii) negligence; iv) negligent misrepresentation; v) fraud; and vi)

violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.  The Marsh Defendants deny liability for any of the claims asserted, and numerous affirmative defenses exist that either in part, or in whole, defeat Plaintiffs' claims.  For these reasons and for the reasons explained below, the Marsh Defendants are entitled to judgment in their favor.[1]

## II.    LAW AND ARGUMENT

### A.    Choice of Law.

"Under the Erie doctrine, the federal court in a diversity action will apply the law of the state in which it sits including that state's choice of law rule."  *Shared Imaging, Inc. v. Campbell Clinic, Inc.*, 994 F. Supp. 919, 923 (W.D. Tenn. 1998).  When, as here, the court is sitting in diversity, the substantive law of the forum state controls.  *Kipin Indus., Inc. v. Van Deilen Intern., Inc.*, 182 F.3d 490, 493 (6th Cir. 1999).  The parties do not dispute that Tennessee law controls this case.

### B.    Burden of Proof.

Plaintiffs have the burden to prove each element, of each claim, against each Marsh Defendant, by a preponderance of the evidence.  The term "preponderance of the evidence" means that amount of evidence that causes one to conclude that an allegation is probably true.  See, T.P.I. – Civil § 2.40.  To prove an allegation by a preponderance of the evidence, a party must convince the jury that the allegation is more likely true than not true.  *Id.*

If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence and the party having the burden of proving that issue has failed.

---

[1]  On July 2, 2007, the Marsh Defendants filed their motion for partial summary judgment on Plaintiffs' claims for fraud, negligent misrepresentation and the Tennessee Consumer Protection Act.  Should the Marsh Defendants prevail on their motion, it goes without saying that any arguments in this memorandum regarding those claims are moot.

Plaintiffs are required to prove their claims for punitive damages by clear and convincing evidence. *See*, T.P.I. – Civil § 14.55. *See also*, *Cambio Health Solutions, LLC v. Reardon,* 213 S.W.3d 785, 792 (Tenn. 2006) (citing, *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1996)). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges,* 833 S.W.2d at 901, n.3.

C.    **Plaintiffs' Claims.**

1.    **Breach of Contract.**

Plaintiffs claim that each Marsh Defendant contracted with Plaintiffs to determine risk exposures faced by Plaintiffs and to obtain insurance coverage suitable to Plaintiffs' needs that would fully and adequately insure them. *See,* Amended Complaint at ¶ 49. Plaintiffs further claim that each Marsh Defendant breached this alleged contract for several reasons. *Id.* at ¶ 50.

In their depositions, the Plaintiffs were unable to define the terms of any alleged contract, but even assuming that such a contract existed, Plaintiffs cannot show that any Marsh Defendant materially breached the contract or that Plaintiffs incurred damage as a result thereof.

2.    **Breach of the Covenant of Good Faith and Fair Dealing.**

In conjunction with Plaintiffs' claim for breach of contract, Plaintiffs claim that each Marsh Defendant breached a duty of good faith and fair dealing. Tennessee law provides that implied in every contract is a duty of good faith and fair dealing. *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). It is inherent in enforcement of this duty that a contract exist between the parties. Therefore, if no contract is found between Plaintiffs and any Marsh Defendant, then the claim for breach of the duty of good faith and fair dealing must fail.

ND: 4833-0451-9937, v. 1

Even if a contract is found to exist, no Marsh Defendant breached this implied duty. This duty requires a contracting party to do nothing that will have the effect of impairing or destroying the rights of the other party to receive the benefits of the contract. *Winfree v. Educators Credit Union,* 900 S.W.2d 285, 289 (Tenn.Ct.App.1995). The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement. *Goot v. Metropolitan Government of Nashville and Davidson County,* No. M2003-02013-COA-R3-CV, 2005 WL 3031638, *7 (Tenn.Ct.App. Nov. 9, 2005) (footnotes omitted) (emphasis added) (copy attached as Exhibit "1"). The extent of the duty to perform a contract in good faith depends upon the individual contract in each case. "In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *TSC Industries, Inc. v. Tomlin,* 743 S.W.2d 169, 173 (Tenn.Ct.App.1987); *see also Covington v. Robinson,* 723 S.W.2d 643, 645-46 (Tenn.Ct.App.1986) (determining whether the parties acted in good faith in the performance of a contract, the court must judge the performance against the intent of the parties as determined by a reasonable and fair construction of the language of the instrument); *Bank of Crockett v. Cullipher,* 752 S.W.2d 84, 91 (Tenn.Ct.App.1988) (holding the parties may by agreement "determine the standards by which the performance of obligations are to be measured").

The Plaintiffs cannot prove that any Marsh Defendant impaired Plaintiffs' rights to receive the benefit of some alleged contract between them. Seabury procured insurance for Plaintiffs and did not impede Plaintiffs' receipt of said insurance, regardless of Plaintiffs' claims that the Marsh Defendants did not provide proper or sufficient coverage. Without proof that the Marsh Defendants somehow interfered with Plaintiffs receiving the insurance policies or the

benefits of those policies, allegations, or even proof, of failing to comply with a contract are insufficient to prove that the Marsh Defendants breached the duty of good faith and fair dealing.

### 3.      **Negligence Claim.**

Plaintiffs claim that each Marsh Defendant owed a duty of care to Plaintiffs to determine Plaintiffs' risk exposures and advise Plaintiffs as to the types and amounts of insurance available to cover those exposures.  *See*, Amended Complaint at ¶ 49.  Plaintiffs also claim that each Marsh Defendant owed them a duty of care to obtain insurance suitable for Plaintiffs' needs and to "fully insure" Plaintiffs.  *Id.* at ¶ 50.  Plaintiffs further claim that each Marsh Defendant breached these alleged duties for a variety of reasons, but these reasons essentially amount to a claim that each Marsh Defendant did not obtain sufficient coverage for Plaintiffs.

In order to prevail on this claim for negligence, Plaintiffs must prove:  (1) a duty of a care owed by each Marsh Defendant to the Plaintiffs; (2) conduct falling below that standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause.  *Turner v. Jordan,* 957 S.W.2d 815, 818 (Tenn. 1997).  Plaintiffs cannot show that any Marsh Defendant's conduct fell below some standard of care, Plaintiffs cannot prove proximate or legal cause, and Plaintiffs cannot prove damages.  Furthermore, even if Plaintiffs could carry their proof burden, the principles of comparative fault apply, as set forth in *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn.1992).  The Marsh Defendants will prove at trial that Plaintiffs were well aware of and approved the insurance coverages that were placed.

### 4.      **Fraud Claim.**

A party alleging fraud bears the burden of proving every necessary and material element of fraud.  *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995) (quoting *Williams v. Spinks*, 7 Tenn. App. 488 (1928)).  "Fraud is never presumed; and where it is alleged the facts

sustaining it must be clearly made out."  *Id.* (quoting *Bevins v. Livesay*, 221 S.W.2d 106, 109 (1949)).  The elements of fraud are:

1.      the defendant made an intentional misrepresentation of a material fact;

2.      the misrepresentation must involve a past or present fact;

3.      the defendant knew the representation was false when made; and

4.      the plaintiff incurred an injury caused by reasonable reliance on the misrepresentation.

*See, Dobbs v. Guenther,* 846 S.W.2d  270, 274 (Tenn. Ct. App. 1992).

### a.      Dyer Investment Company, LLC's Fraud Claim.

Billy Walker ("Walker") is an owner and the Chief Manager of Plaintiff, Dyer Investment Company, LLC ("DIC").  He is also the Chief Manager of Plaintiff, Dyer Aqua, LLC ("DA").  DIC tendered Walker as its Fed. R. Civ. P. 30(b)(6) designee to provide deposition testimony on its behalf.  During that 30(b)(6) deposition, Walker was asked to describe any misrepresentations made by Brant Horne or any other employee of a Marsh Defendant.  Walker testified that he had no knowledge of any misrepresentation by Horne or anyone else.  (Deposition of Billy Walker ("Walker Depo."), pp. 212-213, excerpts attached at Exhibit "2").  That testimony alone entitles the Marsh Defendants to judgment on DIC's fraud claim.

While the complete failure of proof discussed above dooms DIC's fraud claim, that claim also fails because DIC, through its 30(b)(6) designee, Walker, also lacked any proof whatsoever of damages.  On that subject, Walker testified that he could not put a dollar figure on DIC's damages.  (Walker Depo., pp. 221-222, excerpts attached as Exhibit "2").

The Marsh Defendants are entitled to judgment on DIC's fraud claims because DIC cannot prove that a misrepresentation occurred or that it was damaged.

**b.      Dyer Aqua, LLC's Fraud Claim.**

Plaintiff, DA, tendered its CEO, Rod Reed ("Reed") as its Fed. R. Civ. P. 30(b)(6) designee.   When asked during that deposition whether any Marsh Defendant made any misrepresentations, Reed initially testified that he knew of no misrepresentations, then he testified that Horne represented that he was going to evaluate DA's exposures and obtain proper coverage.   (Deposition of Rod Reed ("Reed Depo."), pp. 142-144; and 146-149, excerpts attached as Exhibit "3").

As the deposition excerpts make clear, Plaintiff, DA, through its 30(b)(6) designee, Reed, relies on statements concerning what Horne was going to do in the future as the basis for its fraud claim.   That reliance entitles the Marsh Defendants to judgment.   Fraud claims must be based on proof of a misrepresentation of an existing or past material fact and not some future event.   *Maddux v. Cargill, Inc.*, 777 S.W.2d 687, 691-92 (Tenn. Ct. App. 1989).   Indeed, representations concerning future events are not actionable even if they later prove to be false. *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980).   Similarly, statements of intention are not actionable.   *Cumberland Portland Cement Co. v. Reconstruction Finance Corp.*, 140 F. Supp. 739, 751 (E.D. Tenn. 1953), *aff'd* 232 F.2d 930 (6th Cir. 1956); *McElroy*, 632 S.W.2d at 130; *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498-99 (Tenn. 1978).

DIC's 30(b)(6) designee, Walker, has no proof of any misrepresentations or damages, and DA's 30(b)(6) designee, Reed, relies on statements concerning what Horne was going to do in the future as the basis for DA's fraud claims.   Neither DIC nor DA can prove essential elements of their fraud claims; therefore, the Marsh Defendants are entitled to judgment in their favor on these claims.

5.    **Negligent Misrepresentation Claims.**

All of the testimony and arguments discussed above concerning the flaws in DIC's and DA's fraud claims apply with equal force to their negligent misrepresentation claims. (Amended Complaint, Fourth Count).   DIC's 30(b)(6) designee, Walker, has no proof of any misrepresentation, and DA's 30(b)(6) designee, Reed, refers to statements concerning future intentions as "misrepresentations".  Liability for negligent misrepresentation requires proof that a defendant represented false information concerning a material past or existing fact.  *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991); *Cumberland Portland Cement*, *supra*.  Statements of intention are not actionable, *Fowler*, *supra*, and neither are statements concerning future events.  *McElroy, supra; Brungard, supra.*

Because Plaintiffs cannot prove an essential element of their negligent misrepresentation claims, the Marsh Defendants are entitled to judgment in their favor on those claims.

Even if Plaintiffs could prove that a particular Marsh Defendant made a material misrepresentation, the doctrine of comparative fault applies to Plaintiffs' negligent misrepresentation claim. *Staggs v. Sells, et al.,* 86 S.W.3d 219, 224 (Tenn.Ct.App.2001).  The doctrine of comparative fault in Tennessee is applied to negligence cases, and negligent misrepresentation is an action "in tort determined by the general principles of the law of negligence." *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780, 784 (Tenn.1970). "If the plaintiff meets the burden of establishing the defendant's duty in a particular case, as well as the other elements of the negligence claim, the trier of fact must apply the principles of *McIntyre v. Balentine.*"  *Bond v. Belle Meade Fund,* No. 96C-4542, 1998 WL 775662, at *4 (Tenn.Ct.App. Nov. 9, 1998) (copy attached as Exhibit "4").

6.      **Tennessee Consumer Protection Act.**

The Sixth Count of DIC's and DA's Amended Complaint purports to state a cause of action against each Marsh Defendant under §47-18-104(b)(27), which is the TCPA's catch all provision.  Plaintiffs' claims under the TCPA must fail for two reasons: first, much like Plaintiffs' claims for fraud or negligent misrepresentation, Plaintiffs' cannot prove any misrepresentation or deceptive conduct that would amount to a violation of the TCPA.

Furthermore, Plaintiffs' claims under the TCPA are barred by the TCPA's one year statute of limitations.  Section 47-18-110 provides that TCPA actions must be brought within one year from a person's discovery of the alleged unlawful act or practice.  The cause of action accrues when the action giving rise to the claim is discovered.  *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000).  Tennessee courts have stressed that it is not necessary that a plaintiff actually know the type of legal claim he or she possesses.  As held by the Tennessee Supreme Court:

> It is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a 'right of action'; the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.

*Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995), quoting, *Row v. Jefferson,* 875 S.W.2d 653, 657 (Tenn. 1994).

All counts of DIC's and DA's Amended Complaint against the Marsh Defendants, including the Sixth Count under the TCPA, have as their common factual basis the allegation that the Marsh Defendants failed to obtain sufficient insurance coverage for DIC's and DA's real and personal property.  *See* Amended Complaint ¶¶ 16, 21, 27, 28, 29, 31, 32, 36, 37, 38, 49, First Count ¶ 50, Second Count ¶ 52, Third Count ¶¶ 50, 51, Fourth Count ¶¶49, 50, 51, 52, Fifth

Count ¶¶ 49, 50, 51, 52, and Sixth Count, TCPA claim incorporating cited counts from Second through Fifth Counts described above.

Hurricane Frances struck September 5, 2004.  Amended Complaint, ¶ 39.  Hurricane Jeanne struck September 26, 2004.  *Id*. at ¶ 42.  DIC and DA filed their original Complaint in this case on October 28, 2005.  One year prior to that date is October 28, 2004.  Because both DIC and DA knew of the insurance coverage problems they complain about in the Amended Complaint more than one year before October 28, 2005, their TCPA claims are barred under §47-18-110's one year statute of limitations.

Walker, one of DIC's owners and the Chief Manager of both DIC and DA, was deposed in his personal capacity and as the 30(b)(6) designee of DIC.  Walker, whose knowledge is imputed to DIC and DA, *Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322-23 (Tenn. Ct. App. 1982), testified that he learned that there was a coverage problem within three weeks of the last hurricane.  (Walker Depo., pp. 234-237, excerpts attached as Exhibit "2").  The last hurricane struck September 26, 2004.  Three weeks from that date is October 17, 2004.  Applying §47-18-110's one year statute of limitations to that date, the Complaint had to be filed on or before October 17, 2005, or it would be barred by the one year statute of limitations.  Because DIC and DA filed the Complaint October 28, 2005, their TCPA claims are barred by the one year statute of limitations.

While Walker's deposition testimony discussed above makes it clear that DIC and DA are barred from asserting TCPA claims by virtue of §47-18-110's one year statute of limitations, significantly, Walker's son-in-law, Eddie Floyd ("Floyd"), puts Walker's discovery of coverage problems approximately a month earlier in time than does Walker.  Specifically, Floyd, who was both Walker's son-in-law and a former employee of Marsh Private Client Services, testified in

his deposition that Walker knew that there were insurance coverage problems within a week after the first hurricane, Hurricane Frances, which struck on September 5, 2004.  (Deposition of Eddie Floyd ("Floyd Depo."), pp. 42-47; and 55-56, excerpts attached as Exhibit "5").

Liberally construing Floyd's deposition testimony, within one week of Hurricane Frances, he had a conversation with Walker in which Walker was extremely upset and said that he did not think that they had insurance coverage.  Hurricane Frances struck September 5, 2004.  One week from that date is September 12, 2004.  Using that date, and applying §47-18-110's one year statute of limitations, DIC's and DA's TCPA claims had to be brought on or before September 12, 2005.  They were brought six weeks later, on October 28, 2005.

DA's CEO, Reed, whose knowledge is imputed to DA, *Griffith Motors, supra,* testified personally and as DA's 30(b)(6) designee that he discovered there was a problem with insurance coverage within a week to ten days of September 26, 2004, the date Hurricane Jeanne struck. (Reed Depo., pp. 232-233, excerpts attached as Exhibit "3").

Thus, liberally construing Reed's testimony, he knew there was an insurance coverage problem within ten days of September 26, 2004, the date Hurricane Jeanne struck.  Ten days from that date is October 6, 2004.  Using that date as the discovery date and applying §47-18-110's one year statute of limitations, DIC and DA had to file a TCPA suit on or before October 6, 2005.  They filed the suit October 28, 2005.

DIC's and DA's TCPA claims cannot be proven and are barred by §47-18-110's one year statute of limitations.  Therefore, the Marsh Defendants are entitled to judgment in their favor on those claims.

D.     __Marsh Defendants' Affirmative Defenses__.

The Marsh Defendants have multiple affirmative defenses that negate some or all of Plaintiffs' claims including but not limited to the following:

Third Affirmative Defense.   MMC is a holding company that never had any relationship with either Plaintiff and did not perform any services for either Plaintiff.   No employee handling Plaintiffs' account was employed by MMC.   MMC cannot be vicariously liable for claims against a subsidiary.   Under "Tennessee corporation law, a corporation and its shareholders are distinct entities., *see, Hadden v. City of Gatlinburg*, 746 S.W.2d 687, 689 (Tenn. 1998).   The separate legal status of a corporation protects its shareholders from direct responsibility for the corporation's debts and other liabilities, except in rare circumstances when a plaintiff is successful in persuading a court to disregard the separate corporate entity, also referred to as "piercing the corporate veil." *Cambio Health Solutions, LLC v. Reardon,* 213 S.W.3d 785, 790 (Tenn. 2006) (citing, *Cont'l Bankers Life Ins. Co. v. Bank of Alamo*, 578 S.W.2d 625, 631 (Tenn. 1979). "To pierce the corporate veil, a plaintiff must make more than a showing that a parent controls a subsidiary; the plaintiff must also show that a shareholder exercised complete control over a subsidiary and used that control to commit fraud or a wrong." *Cont'l Bankers Life Ins. Co.*, 578 S.W.2d at 632.   Plaintiffs cannot make this showing, therefore, MMC is not liable to Plaintiffs for anything.

Fourth Affirmative Defense.   The claims against Marsh and Marsh USA must be dismissed for the same reasons.   Marsh is also a holding company that never had any relationship with or performed services for either Plaintiff, and Marsh USA is also a separate entity that never had any relationship with or performed services for either Plaintiff.   No employee handling Plaintiffs' account was employed by Marsh or Marsh USA.

Twentieth Affirmative Defense.  Plaintiffs' claims are barred or limited by the doctrine of unclean hands because Plaintiffs concealed material information concerning "moral risk" during the insurance application process, and because a corporate affiliate, RFW Construction Group, LLC ("RFW"), built the Sebastian building in violation of Florida criminal and civil law.

Plaintiffs' principals, Walker and Reed, served prison time for felony bank fraud convictions.  In documents provided to Brant Horne during the application process, Walker and Reed touted their banking experience.  They did not tout, nor for that matter, mention the fact that their banking careers ended in prison because they committed felony bank fraud.  According to Plaintiffs' expert Van Hedges, felony convictions are a "moral risk" in which insurers are keenly interested when deciding to issue insurance.  (Van Hedges Deposition, p. 87, excerpts attached as Exhibit "6").

After the hurricanes, RFW built the Sebastian building.  Many of the same people who own Plaintiffs also own RFW.  Despite its vehement denials to the contrary, RFW was the contractor on the job to rebuild the Sebastian building.  RFW did the job in violation of Florida criminal and civil law, F.S.A. §§ 489.127, 489.133, 489.115 and 489.117, because it was not licensed to engage in contracting in the State of Florida.

The doctrine of unclean hands can be a complete bar to relief.  It derives from the equitable maxim: "He who comes into equity must come with clean hands." *Thomas v. Hedges*, 183 S.W.2d 14, 16 (Tenn. Ct. App. 1944) (citing *Gibson's Suits in Chancery*, 42 and 51).  The doctrine was discussed by the Tennessee Supreme Court in an opinion authored nearly two hundred years ago: If a complainant's cause of action originates in iniquity, although he may have the right, as against his antagonist, the court of chancery will turn him out without relief,

because it will not give its aid to the establishment and enforcement of a right so stained with sin. *Segal v. United American Bank*, 2005 WL 3543332 at *5 (Tenn.Ct.App. 2005) (citing, *Goodwin v. Hunt*, 1832 WL 1108, at *1 (Tenn. Er. & App. March 1832) (copy attached as Exhibit "7") and *Sartain v. Dixie Coal & Iron Co.,*, 266 S.W.2d 313, 316 (Tenn. 1924). The principle is general, and is one of the maxims of the Court, that whoever who comes into a court asking its interposition in their behalf, must come with clean hands. If it appears that the party has been guilty of unconscientious, inequitable, or immoral conduct with regard to the same matters about which the party is complaining, the party "will be repelled at the threshold of the court." *Continental Bankers Life Ins. Co. v Simmons*, 561 S.W.2d 460, 465 (Tenn. Ct. App. 1977).

Twenty-first Affirmative Defense. Plaintiffs' claims are also barred because Plaintiffs concealed Walker's and Reed's felony convictions during the insurance application process. That renders any insurance policy issued void *ab initio* and Plaintiffs would be entitled to no coverage. *See, Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, 303 F.Supp.2d 897 (W.D.Tenn. 2003); *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232 (Tenn.Ct.App. 2000). As discussed above, according to Plaintiffs' own expert, Van Hedges, felony convictions are a "moral risk" deemed material to insurance companies when they are considering issuing a policy. Concealment of that moral risk here rendered any policy that would have been issued void *ab initio*.

Twenty-second Affirmative Defense. Plaintiffs' claims are barred under Florida Statutes Annotated § 489.101 et seq., because the contract for rebuilding the Sebastian building was unenforceable in law or equity, no money was payable to the contractor RFW, and any payments made were voluntary. Specifically, F.S.A. § 489.128 provides in pertinent part as follows: "As a matter of public policy, contracts entered into on or after October 1, 1990, by an

unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor."
All payments made to RFW were voluntary payments because RFW was unlicensed.  The Marsh
Defendants cannot be liable for Plaintiffs' voluntary payments to RFW under the voluntary
payment rule.  *See, Roach v. Underwood*, 241 S.W.2d 498 (Tenn. 1951) (Where one makes a
voluntary payment knowing all the facts and circumstances and yet elects to pay the claimed
amount, that amount paid cannot be recovered);  *See also*, *Bridgecourt Apartments Partnership
v. Ellerbe*, 2004 WL 221310 (Tenn. Ct. App. 2004) (copy attached as Exhibit "8").

     E.    **Underwriter's Claim Against Marsh Defendants.**

Nothing any Marsh Defendant did or did not do caused Plaintiffs to sue the insurer,
Certain Underwriters at Lloyd's, London ("Lloyd's).  Plaintiffs made a business decision to sue
Lloyd's and there is not a single piece of proof in this record that any Marsh Defendant caused
Plaintiffs to sue Lloyd's.  To prove a claim for implied indemnity, Lloyd's must prove that it has
been forced to defend itself due to some fault or wrongdoing by the Marsh Defendants.  *See,
Electric Controls v. Ponderosa Fibres of America,* 19 S.W.3d 222, 229-30 (Tenn. Ct. App.
1999).  Lloyd's can muster no such proof and the Marsh Defendants are entitled to judgment in
their favor on Lloyd's claims.

     F.    **Plaintiffs Are Not Entitled to Prejudgment Interest.**

In a diversity case, state law governs the district court's decision whether to award
prejudgment interest.  *See, Conte v. General Housewares Corp.*, 215 F.3d 628, 633 (6th Cir.
2000); *Poundstone v. Patriot Coal Co., Ltd.,* 485 F.3d 891, 901 (6th Cir. 2007).  Tennessee Code
Annotated § 47-14-123, provides that prejudgment interest *may* be awarded at a rate *not to
exceed* 10 percent.  The award is not mandatory and the rate to be awarded is within the sound
discretion of the trial court.  *See, Scholz v. S. B. Intern, Inc.,* 40 S.W.3d 78, 81 (Tenn. Ct. App.

2000).  The Court must reach an equitable decision to determine whether to award prejudgment interest in appropriate cases.  *Id.*  Due to the fact that Plaintiffs' claims are unliquidated, inflated, and because Plaintiffs are not entitled to the damages sought, Plaintiffs are not entitled to prejudgment interest.

### G.   Plaintiffs Are Not Entitled To Punitive Damages.

In a diversity action, the propriety of a punitive damages award, as well as the factors for the jury to consider, are questions of state law.  *See, Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 278, 109 S.Ct. 2909, 2921-22, 106 L.Ed. 2d 219 (1989).  However, federal law will control these issues involving the proper review of a jury award by a federal district court and court of appeals.  *Id.*

Under Tennessee law, punitive damages are only to be awarded in the most egregious of cases.  *See, Cambio Health Solutions, LLC v. Reardon,* 213 S.W.3d 785, 792 (Tenn. 2006) (*citing, Hodges v. S. C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn. 1996)).  Plaintiffs must prove entitlement to punitive damages by clear and convincing evidence.  *Id.*  In Tennessee, punitive damages may only be awarded if a defendant has acted intentionally, maliciously, fraudulently, or recklessly.  *Hodges,* 833 S.W.2d at 901.

No facts exist in this record entitling Plaintiffs to punitive damages and judgment on that issue should be entered in favor of the Marsh Defendants.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By:   /s/ Larry H. Montgomery
           Larry H. Montgomery (#9579)
           Lee J. Chase, III (#8443)
           Jeremy G. Alpert (#19277)

One Commerce Square, Suite 1700
Memphis, Tennessee 38103
(901) 525-1322 Telephone
(901) 525-2389 Facsimile
Primary Email:  lmontgomery@glankler.com

Attorneys for the Marsh Defendants

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a copy of the foregoing has been served on counsel of record by electronic means via the Court's electronic filing system on this the 14th day of July, 2007.

                             /s/ Larry H. Montgomery